## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM L. DUNLEAVY, IV and ERIN E. FRANCIS, | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | 2:19-cv-1304 |
| vs. | ) ) | |
| MID-CENTURY INSURANCE COMPANY, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

This is a dispute over whether Plaintiffs/Counterclaim Defendants William Dunleavy, IV and Erin Francis are entitled to underinsured motorist coverage from Defendant/Counterclaim Plaintiff Mid-Century Insurance Company for a motorcycle accident that occurred in 2015. Mid-Century denied coverage under the "household vehicle exclusion" in the automobile insurance policy it issued to Plaintiffs.

Plaintiffs contend that Mid-Century's denial was improper under the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019). In that case, the court held that household vehicle exclusions could not be used to work as *de facto* waivers of stacked underinsured motorist coverage. *Id.* at 138.

Mid-Century, on the other hand, argues *Gallagher* is irrelevant because the holding was narrow, and this case doesn't involve stacking. Mid-Century points out, and Plaintiffs concede, that Mr. Dunleavy waived underinsured motorist coverage for his motorcycle, which was covered by a separate policy issued by a separate insurer. Thus, according to Mid-Century, Plaintiffs aren't

trying to stack the Mid-Century policy on anything. Rather, Plaintiffs are trying to use the Mid-Century to establish underinsured motorist coverage in the first instance. Mid-Century argues that under the unambiguous terms of the policy, Mid-Century does not cover Plaintiffs for such a loss.

For the reasons below, the Court agrees with Mid-Century and finds that there is no underinsured motorist coverage here. And because Mid-Century properly denied coverage, Plaintiffs' tag-along claims for bad faith and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*, also fail.

The Court will therefore grant Mid-Century's motion for judgment on the pleadings and enter judgment in its favor on all counts in Plaintiffs' complaint and on Mid-Century's counterclaim.

### BACKGROUND

Mr. Dunleavy and Ms. Francis are married. [ECF 17, ¶ 2]. On August 12, 2015, Mr. Dunleavy was operating a motorcycle with Ms. Francis riding as his passenger when an automobile driven by Kimberly Baker struck Mr. Dunleavy's motorcycle. [ECF 1-1, ¶ 10]. The collision left Plaintiffs seriously injured. [*Id.* at ¶¶ 12-13].

Ms. Baker was insured. [*Id.* at ¶ 14]. Her policy contained a liability limit of $100,000 per accident that her insurer paid in full to Plaintiffs. [*Id.*]. Plaintiffs contend that Ms. Baker's insurance limits did not provide enough coverage to compensate Plaintiffs for their injuries and the other damage they sustained. [*Id.*]. Plaintiffs now seek underinsured motorist coverage under their Mid-Century automobile policy.

Mid-Century issued Plaintiffs an automobile policy, No. 19571-34-76, that was effective from August 5, 2015 to March 25, 2016. [ECF 6, p. 11, ¶ 5]. That policy has a household vehicle exclusion, which states that underinsured

motorist coverage does not apply "[t]o bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form." [ECF 6-1, MCIC-0015]. The only insured vehicles under the Mid-Century Policy were a Jeep Liberty and Chevrolet Traverse. [*Id.* at MCIC-004]. Mr. Dunleavy's motorcycle was not a covered vehicle. [*Id.*].

Mr. Dunleavy's motorcycle was separately insured through Progressive. [ECF 20, ¶ 8; ECF 24, ¶ 8]. Mr. Dunleavy rejected underinsured motorist coverage on his Progressive policy. [*Id.*].

Following the accident, Mid-Century issued a coverage disclaimer informing Plaintiffs that they were not entitled to underinsured motorist coverage because "the vehicle [they] were occupying is owned by [them], [they] did not list it on [their] Mid-Century policy, and [they] did not elect Uninsured/Underinsured Motorist Coverage on the policy through Progressive[.]" [ECF 6-2, p. 4].

Several years later, in 2019, the Pennsylvania Supreme Court issued its decision in *Gallagher*. Based on that decision, Plaintiffs sued Mid-Century, alleging breach of contract, bad-faith insurance practices, and violations of the UTPCPL. [ECF 1-1]. Plaintiffs' core allegation is that Mid-Century's reliance on the household vehicle exclusion to deny underinsured motorist coverage violates the new rule of law established by *Gallagher*.

In response, Mid-Century filed a counterclaim for declaratory judgment, seeking a declaration regarding the appropriateness of its denial decision. [ECF 6]. After the pleadings closed, Mid-Century moved for judgment on the pleadings. [ECF 20]. That motion is now ready for disposition.

## **LEGAL STANDARD**

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 739 (W.D. Pa. 2017) (Gibson, J.) (cleaned up).  The only difference is that "a Rule 12(b) motion is filed before a 'responsive pleading' is filed," while "a Rule 12(c) motion may be filed 'after the pleadings are closed.'" *Id.* (cleaned up).  "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Id.* (cleaned up).

To survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

Because the Court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed

as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citation omitted).

## DISCUSSION & ANALYSIS

### I.   Mid-Century's policy does not provide underinsured motorist coverage to Plaintiffs.

Plaintiffs do not dispute that the Mid-Century policy contains a household vehicle exclusion. [ECF 20, ¶ 18; ECF 24, ¶ 18]. The Court must "ascertain the intent" of that exclusion by looking to the "terms used in the written insurance policy." *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The plain meaning is that underinsured motorist coverage does not apply to vehicles owned by Plaintiffs that Mid-Century did not otherwise cover under the policy. [ECF 6-1]. Mid-Century did not cover the motorcycle Plaintiffs were riding at the time of the accident. *See* [*id.*]. Thus, if the household vehicle exclusion is enforceable, Mid-Century was right to deny coverage.

Plaintiffs argue, however, that under *Gallagher*, Mid-Century can't use the household vehicle exclusion to deny them the benefit of stacking their underinsured motorist benefits in the Mid-Century policy. [ECF 25, pp. 4-6]. According to Plaintiffs, the Pennsylvania Supreme Court held that using the exclusion in such a way violates the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. §§ 1701, *et seq.* Plaintiffs believe the only way they could be validly denied the benefit of stacking their underinsured motorist coverage is if they signed a statutorily prescribed waiver form, which they never did. [ECF 25, p. 5].

Mid-Century counters that *Gallagher* is inapplicable because this isn't a stacking case at all. According to Mid-Century, "Plaintiffs have no underinsured motorist coverage with which to stack their Mid-Century policy."

- 5 -

[ECF 26, p. 3]. Thus, Mid-Century argues that the central issue is determining whether underinsured motorist coverage exists in the first place under its policy. [*Id.* at p. 1]. Mid-Century contends that applying the household vehicle exclusion, it's clear that such coverage does not exist.

Mid-Century is correct on both counts. This case doesn't involve stacking, and Plaintiffs did not purchase underinsured motorist coverage for their motorcycle from Mid-Century.

## A.   This case doesn't involve stacking and so *Gallagher* is inapplicable.

The Court's analysis of whether *Gallagher* invalidates Mid-Century's use of the household vehicle exclusion to deny coverage begins with the MVFRL.

"Section 1738 of the MVFRL governs the stacking of underinsured motorists benefits as well as the waiver of such stacking." *Stockdale v. Allstate Fire & Cas. Ins. Co.*, No. 19-845, 2020 WL 953284, at *3 (E.D. Pa. Feb. 27, 2020) (cleaned up). Subsection 1738(a) states that "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa. Cons. Stat. Ann. § 1738(a). By its terms, this provision makes stacked underinsured motorist coverage the "default coverage" when "more than one vehicle is insured under one or more policies providing for [uninsured/underinsured motorist] coverage." *Gallagher*, 201 A.3d at 137.

But for this default coverage to exist, each of the policies being stacked must "provide" uninsured or underinsured motorist coverage. 75 Pa. Cons. Stat. Ann. § 1738(a). *Gallagher* did not alter this requirement. Instead, in *Gallagher*, the Pennsylvania Supreme Court stopped insurance companies

from using the household vehicle exclusion as an end-run around the requirement of a signed form to waive stacked coverage. As a result, the court's decision was narrow, holding only that the household vehicle exclusion was unenforceable if it is "applied to preclude stacking of underinsured motorist benefits."[1] *Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653, 655 (W.D. Pa. 2020) (Horan, J.). *Gallagher* does not address, let alone invalidate, the use of the household vehicle exclusion to deny underinsured motorist coverage in the first instance. *See id.* The rationale for *Gallagher* makes this point clear.

When a policyholder buys underinsured motorist coverage for several vehicles, within or across policies, the law authorizes the policyholder to stack the per-vehicle limits of all that coverage that the policyholder bought. *Gallagher*, 201 A.3d at 137. An insurer cannot insert an exclusion in the policy that effectively prevents the stacking of limits of covered vehicles by saying there is no coverage for some of those vehicles. *Id.* at 138. But this rationale is predicated on the policyholder buying underinsured motorist coverage **on**

---

[1] *Gallagher* is, truth be told, a bit puzzling. The court combined and applied in tandem analytically distinct insurance principles. Under well-settled insurance law, stacking concerns the issue of allocation. Can separate insurance policies' limits be stacked to allocate losses across multiple limits? Exclusions concern the separate issue of scope of coverage. Is the covered loss within or outside the scope of the insuring agreement? The Pennsylvania Supreme Court found that insurers can't limit the scope of coverage in such a way as to have the effect of preventing a policyholder from allocating its losses across multiple policies' limits. This is an uneasy combination of distinct insurance principles—one that Justice Wecht, in dissent, called "counterintuitive." *See Gallagher*, 201 A.3d at 139, 142 (Wecht, J., dissenting) ("The Majority's analysis conflates the rejection of stacking (which requires a written waiver) with the exclusion of certain acts or occurrences from the defined scope of coverage itself (which requires no waiver)."). All of this is to say that this may be why the Supreme Court emphasized the narrowness of its decision. *Id.* at 138 n.8 ("Our focus here is narrow[.]").

*every* vehicle to stack the benefits.    That's the fundamental idea behind stacking—the policyholder stacks limits of coverage that he or she paid for.    *Id.* ("Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision.").    If the vehicle involved in the accident doesn't have underinsured motorist coverage, then the policyholder can't stack anything on top of it because the policyholder hasn't paid for that privilege.

For *Gallagher* to apply, then, there must be underinsured motorist coverage in the first place.    That was true in both *Gallagher* and *Smith v. Nationwide Mut. Ins. Co.*, 392 F. Supp. 3d 540, 541 (E.D. Pa. 2019), the other case upon which Plaintiffs rely.    *See* [ECF 25, pp. 4-6].

In *Gallagher*, the plaintiff "opted and paid for stacked [uninsured] and [underinsured motorist] coverage when purchasing ***both*** [his automobile and motorcycle] policies."    201 A.3d at 133 (emphasis added).    The plaintiff in *Gallagher* first sought and received underinsured motorist coverage under his motorcycle policy (the vehicle involved in the accident) before seeking to stack the coverage he paid for under the automobile policy.    *Id.*    Similarly, in *Smith*, the plaintiff had recovered underinsured motorist benefits from "his State Farm motorcycle policy."    *Smith*, 392 F. Supp. 3d at 541.    The plaintiff was seeking to "stack" additional underinsured motorist benefits under his parent's automobile policy issued by another insurer.[2]    These cases materially differ from the circumstances of this case.

---

[2] In fact, none of the federal district court cases applying *Gallagher* involved the situation presented here of a vehicle that did not have underinsured motorist coverage in the first instance.    *See, e.g.*, *Smith v. AAA Interins. Exch. of Auto. Club*, No. 20-768, 2020 WL 2193357, at *2 (E.D. Pa. May 6, 2020) ("Plaintiff settled her claim against Murphy for his insurance policy limits of $300,000 as well as her UIM claim with her motorcycle insurance company,

Here, Plaintiffs concede that Mr. Dunleavy validly waived underinsured motorist coverage on his Progressive policy for the motorcycle. [ECF 20, ¶ 8; ECF 24, ¶ 8]. So, there is no underinsured motorist coverage on which to "stack" the Mid-Century policy. Because there is no underinsured motorist coverage for the motorcycle under the Progressive policy, Plaintiffs have not properly framed the question for this Court. The question is not whether Plaintiffs may stack the Mid-Century policy, but whether Plaintiffs are entitled to underinsured motorist coverage under that policy in the first instance. For that question, neither Section 1738 nor *Gallagher* are relevant.

### B. Plaintiffs did not buy underinsured motorist coverage for the motorcycle from Mid-Century.

The relevant provision of the MVFRL to this dispute is Section 1731, which generally governs the purchase of underinsured motorist coverage. 75 Pa. Cons. Stat. Ann. § 1731(a), (c). *Gallagher* does not affect the application of that statute to the facts here. *See Barnhart*, 417 F. Supp. 3d at 658 (finding that *Gallagher* did not overturn exclusion cases as applied to Section 1731). Rather, it is the Pennsylvania Supreme Court's decision in *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006 (Pa. 1998) that controls.

In *Eichelman*, plaintiff was injured "when his motorcycle was struck by a pick-up truck being negligently operated by another individual." *Id.* at 1007. Plaintiff recovered the full policy limits from the truck driver's automobile insurance policy. *Id.* But that sum wasn't enough to fully compensate him for his injuries. *Id.* Plaintiff's motorcycle policy "did not provide underinsured

---

Progressive, for those policy limits of $50,000); *Stockdale*, 2020 WL 953284, at *1 ("Stockdale's policy…provided $25,000 in uninsured and underinsured motorist coverage for her one vehicle[.]"); *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 227 (E.D. Pa. 2019) (plaintiff "insured his Piaggio motorcycle with GEICO providing $15,000 in stacked underinsured motorist coverage").

motorist coverage because [he] had expressly waived such coverage." *Id.* Due to this waiver, plaintiff "made a claim for such coverage under two insurance policies that [his] mother and her husband maintained with…Nationwide Insurance Company." *Id.* Nationwide denied coverage under both policies based on the household vehicle exclusion. Ultimately, the Pennsylvania Supreme Court held that the "household exclusion" clause barred plaintiff from recovering underinsured motorist benefits. *Id.* at 1010.

The court started from the premise that "a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy." *Id.* at 1008 (citation omitted). The court found that the language in the exclusion "clearly and unambiguously" barred plaintiff's "recovery of underinsured motorist benefits…since he suffered his injuries while operating a motor vehicle not insured for underinsured coverage." *Id.* The court explained that applying the household vehicle exclusion in this way did not violate public policy; in fact, it was "bolstered by the intent behind the MVFRL, to stop the spiraling costs of automobile insurance in the Commonwealth." *Id.* at 1010. If the court had accepted the contrary position, "it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household." *Id.* Such a result would "likely result in higher insurance premiums on all insureds" because "insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage." *Id.*

The court therefore concluded "that a person who has voluntarily elected not to carry underinsured motorist coverage on his own vehicle is not entitled to recover underinsured motorist benefits from separate insurance policies

issued to family members with whom he resides where clear and unambiguous 'household exclusion' language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage." *Id.*

*Gallagher* did not overrule *Eichelman* because the two cases "are not in conflict." *Stockdale*, 2020 WL 953284, at *3; *see also Butta*, 383 F. Supp. 3d at 431 (suggesting that *Gallagher* and *Eichelman* are not in conflict because *Eichelman* "had no occasion to discuss stacking"). Indeed, the Pennsylvania Supreme Court has even cited *Eichelman* approvingly in a case after *Gallagher*. *See Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1259 (Pa. 2019). Thus, *Eichelman* remains good law and controls the result here.

As in *Eichelman*, Mr. Dunleavy waived underinsured motorist coverage for his motorcycle policy. And, as in *Eichelman*, Plaintiffs are trying to obtain underinsured motorist coverage under a separate policy. That policy, however, clearly states that underinsured motorist coverage will not apply "[t]o bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form." [ECF 6-1, MCIC-0015]. The motorcycle was an "owned" vehicle that was not insured under the Mid-Century policy. [*Id.*]. As a result, Plaintiffs are not entitled to underinsured motorist coverage under the Mid-Century policy.

This result makes sense. Election of underinsured motorist coverage is optional in Pennsylvania. 75 Pa. Cons. Stat. Ann. § 1731(a). Mr. Dunleavy "voluntarily chose not to purchase underinsured motorist coverage" for his motorcycle and applying the plain language of the household exclusion in the Mid-Century policy has "the effect of holding [him] to his voluntary choice." *Eichelman*, 711 A.2d at 1010. Additionally, unlike in *Gallagher*, Mid-Century

"had no notice that its insured[s]…would be operating or occupying a motorcycle." *Barnhart*, 417 F. Supp. 3d at 657.  Had Mid-Century known, it "could have adjusted its [underinsured motorist] premiums to account for the additional risk to insure for [underinsured motorist] coverage for the motorcycle" that Plaintiffs used.  *Id.*  Plaintiffs, however, did not list the motorcycle on the Mid-Century policy when, if they wanted to pay for coverage, they easily could have.  Invalidating the household exclusion here would alter the cost and risk allocation in the insurance contract.  There is no basis for such an alteration.

Mid-Century did not breach the policy when it denied underinsured motorist coverage to Plaintiffs.

## II.    Plaintiffs' bad-faith claim fails as a matter of law.

Next, Plaintiffs argue that Mid-Century violated Pennsylvania's bad-faith statute, 42 Pa. Cons. Stat. Ann. § 8371, because it "lacked a reasonable basis for the coverage denial[.]"  [ECF 25, p. 7].  To state a claim for bad faith under Pennsylvania law, a "plaintiff must demonstrate (1) the insurer lacked a reasonable basis for denying benefits, and (2) the insurer knew or recklessly disregarded its lack of reasonable basis." *Richman v. Richman Real Estate, LLC v. Sentinel Ins. Co., Ltd.*, No 16-1855, 2017 WL 4475963, at *4 (E.D. Pa. June 12, 2017) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  Bad faith must be "proven by clear and convincing evidence and not merely insinuated." *Terletsky*, 649 A.2d at 688 (citation omitted).  Plaintiffs' bad-faith claim fails on the first prong of the test.

When an insurer's coverage denial was reasonable "on the basis of the plain meaning of the Policy and relevant exclusions and definitions," there can be no "bad faith" as a matter of law. *See Lewandowski v. Nationwide Mut. Ins. Co.*, No. 18-1441, 2019 WL 7037587, at *3 (W.D. Pa. Dec. 20, 2019) (Bissoon,

J.).  Put differently, if Mid-Century properly denied coverage, which the Court finds it did, it could not, by definition, have acted in bad faith by denying coverage.  *See, e.g.*, *Cresswell v. Nat. Mut. Cas. Ins. Co.*, 820 A.2d 172, 179 (Pa. Super. Ct. 2003) ("As we have found that [insurer] did not have a duty to provide coverage…, we also conclude that it is impossible for [policyholders] to demonstrate that [insurer] lacked a reasonable basis for denying [policyholder's] coverage" to support a bad faith claim); *Bailey v. State Farm Mut. Auto Ins. Co.*, No. 15-7, 2015 WL 2248228, at *6 (W.D. Pa. May 13, 2015) (Conti, J.) ("[B]ecause Plaintiff cannot state a claim for a breach of the insurance contract, his bad faith claim also must fail[.]"); *Sheikh v. Travelers Pers. Ins. Co.*, No. 06-1477, 2007 WL 2571451, at *4 (E.D. Pa. Aug. 31, 2007) ("Plaintiffs' claim for bad faith fails because Defendant was under no obligation to provide coverage to Plaintiffs for their accident and, accordingly, Travelers had a reasonable basis for denying coverage.") (citation omitted).

Aside from the claim that Mid-Century improperly denied Plaintiffs' underinsured motorist coverage under the policy, Plaintiffs do not specifically allege any other bad-faith conduct.   [ECF 1-1].   While there are some conclusory allegations of bad-faith conduct, those non-specific allegations cannot survive Mid-Century's motion.  *See, e.g.*, *Smith v. State Farm Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (affirming dismissal of bad faith claim where "complaint consist[ed] of conclusory statement unsupported by facts"); *Mondron v. State Farm Mut Auto. Ins. Co.*, No. 16-412, 2016 WL 7384183, at *7 (W.D. Pa. Dec. 21, 2016) (Bissoon, J.) (finding that "conclusory allegations are insufficient to state a plausible basis for relief" under Pennsylvania's bad-faith statute) (citations omitted).

Plaintiffs' bad-faith claim fails as a matter of law.

### III.   Mr. Dunleavy's allegations that Mid-Century inappropriately handled his claim do not state a claim under the UTPCPL.

Finally, Mr. Dunleavy alone alleges that Mid-Century violated the UTPCPL by "knowingly and inappropriately deny[ing], undervalue[ing] and delay[ing] coverage and/or payment of [his] claims."  [ECF 1-1, ¶¶ 34].[3]  The Court already found that Mid-Century did not act inappropriately in denying coverage.  Even if the Court had reached the opposite conclusion, however, the UTPCPL would still not apply to Mr. Dunleavy's claim.

This is because the UTPCPL "applies to conduct surrounding the insurer's pre-formation conduct," while the bad-faith statute applies to "post-contract formation conduct."  *Neustein v. Gov't Emps. Ins. Co.*, No. 18-645, 2018 WL 6603640, at *2 (W.D. Pa. Nov. 29, 2018) (Fischer, J.).  Thus, while "[t]he UTPCPL applies to the sale of an insurance policy, it does not apply to the handling of insurance claims[.]"  *Wenk v. State Farm Fire & Cas. Co. & H.J.M. Enters. Inc.*, Nos. 1284, 1287, 1288, --- A.3d ---, 2020 WL 597224, at *7 (Pa. Super. Ct. Feb 7, 2020) (citation omitted).  Section 8371 "provides the exclusive statutory remedy applicable to claims handling."[4]  *Neustein*, 2018 WL 6603640, at *2 (citations and quotations omitted).  Because Mr. Dunleavy's allegations concern post-contract conduct of Mid-Century, his UTPCPL claim fails.

Even if the UTPCPL could apply to post-formation conduct, "in Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the UTPCPL[.]"  *Neustein*, 2018 WL 6603640, at *2 (cleaned up).  But "an insurer's mere refusal to pay a claim …

---

[3] Ms. Francis withdrew her UTPCPL claim.  [ECF 25, p. 8].

[4] As the Court explained above, Mr. Dunleavy has not stated a claim under that statute.

constitutes nonfeasance," or "the failure to perform a contractual duty."  *Id.*
Nonfeasance "is not actionable" under the UTPCPL.  *Id.*

All Mr. Dunleavy has alleged is that Mid-Century inappropriately handled his claim by "denying payment of [his] benefits" and "failing to re-examine [his] claim after the *Gallagher* decision."  [ECF 1-1, ¶ 38].   That is not a basis for a UTPCPL claim in that it involves nonfeasance. *See Neustein,* 2018 WL 6603640, at *2 (dismissing UTPCPL claim where "the well-pled allegations in the amended complaint suggest that the issue here is GEICO's defective handling of the Neusteins' claim, not malfeasance in the formation of the insurance contract").

Accordingly, Mr. Dunleavy's claim under the UTPCPL also fails as a matter of law.

## CONCLUSION

For the reasons above, the Court will grant Mid-Century's motion for judgment on the pleadings, and enter judgment in Mid-Century's favor on all counts in Plaintiffs' complaint and Mid-Century's counterclaim.    An appropriate order, consistent with this opinion, follows.

DATED this 19th day of May, 2020.

BY THE COURT:


*/s/ J. Nicholas Ranjan*
United States District Judge